IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO. 6:23-283 |
| | ) | 18 U.S.C. § 2 |
| | ) | 18 U.S.C. § 1347 |
| vs. | ) | 18 U.S.C. § 982(a)(7) |
| | ) | 28 U.S.C. § 2461(c) |
| | ) | |
| **STAMATINA BOURRET** | ) | **SEALED INDICTMENT** |

## BACKGROUND

*The Medicaid Program*

1. Title 18 U.S.C. § 24(b), defines a "health care benefit program" as, among other things, "any public or private plan . . . affecting commerce, under which any medical benefit, item, or service is provided to any individual, and includes any individual or entity who is providing a medical benefit, item, or service, for which payment may be made under the plan."

2. Medicaid is a public plan or contract that pays claims submitted by participating health care providers for medically necessary benefits, item, and services rendered to Medicaid members. As such, Medicaid is a "health care benefit program" under Title 18, United States Code, Section 24(b).

3. Medicaid provides health coverage to millions of eligible children, low-income adults, pregnant women, and people with disabilities, including those ages 0 to 21, with Autism Spectrum Disorder ("ASD").

4. The South Carolina Department of Health and Human Services ("SCDHHS") administers the South Carolina Medicaid program on behalf of the United States Department of

Health and Human Services. The Medicaid program in South Carolina is jointly funded by the federal government and the State of South Carolina.

5. To be a participating provider in Medicaid, providers must certify that all services rendered and claims submitted shall be in compliance with all applicable federal and state laws and regulations and in accordance with the South Carolina Plan for Medical Assistance, bulletins, SCDHHS policies, procedures, and Medicaid Provider Manuals.

6. Medicaid service providers send SCDHHS, or its Medicaid Managed Care Organizations, claims detailing the services provided.

7. Medicaid provides benefits and services to its beneficiaries diagnosed with ASD.

8. A Medicaid service provider will submit claims to Medicaid detailing the services provided.

9. The claims submitted by a service provider also includes the following information: the units of services provided, the amount billed by the provider, who provided the services, and other required information. SCDHHS uses this information to pay Service Providers for the services rendered.

*Requirements to Provide ASD Services under Medicaid in South Carolina*

10. According to the Behavior Analyst Certification Board (BACB), a nonprofit corporation that certifies practitioners of Applied Behavior Analysis (ABA), ABA is based on the use of learning principles to improve lives. The practice of ABA focuses on assessing the environmental influences on behavior, assessment-based intervention, and data-based decision making. Among other populations, ABA has been used to address the behavioral needs of individuals diagnosed with autism. In young children with developmental disabilities such as

ASD, the goal of intensive, comprehensive intervention is to improve cognitive, language, social, and self-help skills.

11.  The BCBA also explains that "a Board Certified Behavior Analyst (BCBA) is a graduate-level certification in behavior analysis. Professionals certified at the BCBA level are independent practitioners who provide behavior analysis services. BCBAs may supervise the work of Board Certified Assistant Behavior Analysts (BCaBAs), Registered Behavior Technicians (RBTs), and other professionals who implement behavior-analytic interventions."

12.  In South Carolina, to participate in the Medicaid program to provide ASD services, providers must be Licensed Independent Practitioners or be enrolled as BCBAs or BCaBAs.

13.  With respect to ASD services, SCDHHS oversees and regulates standards for BCBAs and BCaBAs, sets policies for patient eligibility for treatment under Medicaid, pays for services provided to individuals under the age of 21, and implements the rules and regulations on who gets services and who gets paid.

14.  Medicaid-eligible providers of ASD services are required to comply with enhanced enrollment and authorization procedures.

15.  To receive Medicaid-eligible ABA services, a child with ASD must receive a physical examination and a diagnostic evaluation by a qualified professional. Once those evaluations are completed, a BCBA or BCaBA, under the supervision of a BCBA, may conduct a behavioral assessment, which informs the treatment plan for the client. The plan may be implemented by a BCBA, BCaBA, RBT, or a Behavior Technician. RBTs and technicians are supervised by the BCBA or BCaBA. In South Carolina, the technician is required to have certain levels of training and experience but cannot enroll as a provider in Medicaid. Technicians must acquire an RBT credential within a 90-day period from date of hire.

*Services to Treat ASD*

16. Services to treat ASD include, among other services, Adaptive Behavior Treatment by Protocol, procedure code 97153 and Adaptive Behavior Treatment with Protocol Modification, procedure code 97155.

17. Procedure codes 97153 and 97155 are billed as units. Each unit represents 15 minutes of service.

18. SCDHHS has adopted the Medicare Eight Minute Rule for ASD services. This means a provider may not bill for a unit of service if the service is provided for less than eight minutes.

*Agapi Behavior Consultants*

19. Agapi Behavior Consultants, Inc. ("Agapi") was incorporated in the state of South Carolina on October 30, 2014. The listed registered agent on the Articles of Incorporation was Nina Bourret ("Bourret") a/k/a **STAMATINA BOURRET**. The registered address on the Articles of Incorporation was 7 McKenna Commons Ct., Greenville, South Carolina.

20. Agapi enrolled to be a Medicaid provider with SCDHHS during May of 2017.

## COUNTS 1 through 21
### (Health Care Fraud)

**THE GRAND JURY CHARGES:**

21. Paragraphs 1 through 20 of this Indictment are incorporated herein by reference.

### *The Scheme to Defraud*

22. From at least in or around July 2020 through in and around April 2022, in the District of South Carolina and elsewhere, the Defendant **STAMATINA BOURRET** **("BOURRET")**, in connection with the delivery of and payment for health care benefits, items,

4

and services, did knowingly and willfully execute, and attempt to execute, as a principal, aider and abettor, a scheme and artifice to defraud a health care benefit programs affecting commerce, as defined by Title 18, United States Code, Section 24(b), that is, Medicaid, in that **BOURRET** did knowingly, intentionally and unlawfully bill Medicaid for the services listed below, for the beneficiaries listed below, knowing that the claims were false, fictitious, and fraudulent in that the services, or a portion of the services, were not provided, and obtained by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of said health care benefit program.

### *Manner and Means of the Scheme and Artifice*

The manner and means by which **BOURRET** sought to accomplish the scheme to defraud included, among other things, the following:

23. Clients of Agapi would have ABA services rendered by an employee of Agapi who was either a BCBA, BCaBA, RBT, or licensed technician.

24. The services were rendered at the client's home or at Agapi's office, which was located at 7 McKenna Commons Ct., Greenville, South Carolina.

25. While rendering services to clients, employees of Agapi would generally complete a monthly "Therapy Documentation Sheet." In most cases, the Therapy Documentation Sheet was to be filled out by the rendering provider each time services were rendered. The Therapy Documentation Sheet included the following information: (1) Date; (2) Staff Name; (3) Time In; (4) Time Out; (5) Total Time; and (6) Service. Agapi employees would then log into a portal to submit the total time for services rendered which, in turn, would be used to submit claims to Medicaid. The total time is what should have been submitted to Medicaid as reasonable, necessary, and rendered services for each claim.

26.     The amount of services received by each Agapi client depended on whether the client was in school full-time or home-schooled. In general, a child that attended school full-time would generally receive services 2 to 4 days a week for between 2 to 3 hours during the school year. During the summer, a child that attended school full-time could receive up to 4 hours of services a day. A child who was home-schooled could have received 20 to 40 hours of direct therapy a week depending on the child's needs and Agapi's staffing abilities.

27.     Agapi was closed on the weekends, and it was rare that a client received weekend therapy.

28.     **BOURRET** was submitting false and fictitious claims to Medicaid for services not rendered, to include weekend services, and submitting false and fictitious claims for services beyond what was actually performed on the beneficiaries.

29.     **BOURRET** would cause claims to be submitted to Medicaid under certain Agapi employee's national provider numbers (NPI) for certain beneficiaries when those employees did not work in the region of South Carolina where the beneficiary lived and/or the employee never treated the beneficiary.

### *Acts in Execution or Attempted Execution of the Scheme and Artifice*

30.     On or about the dates set forth below, as to each count, in the District of South Carolina and elsewhere, **BOURRET,** in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, as a principal, aider and abettor, the above-described scheme and artifice to defraud a health care benefit program affecting commerce, as defined by Title 18, United States Code, Section 24(b), that is, Medicaid, and to obtain by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control

of said health care benefit program, in that **BOURRET** submitted and caused the submission of the following false and fraudulent claims for the services listed below, for the beneficiaries listed below, knowing that the claims were false, fictitious, and fraudulent in that the services, or a portion of the services, were not provided.

| Count | Beneficiary[1] | Code Claimed & Units | Rendering Provider[2] | Date of Service | Claim Submit Date | Claim Number[3] | Charge Amount |
|---|---|---|---|---|---|---|---|
| 1 | 1873 | 97155 & 20 | 9010 | 1/23/2021 | 3/26/2021 | 007278 | $248.00 |
| 2 | 1873 | 97153 & 24 | 9010 | 5/4/2021 | 5/7/2021 | 008608 | $232.80 |
| 3 | 1873 | 97153 & 24 | 9010 | 2/10/2022 | 2/14/2022 | 006908 | $232.80 |
| 4 | 6845 | 97153 & 12 | 9010 | 11/7/2020 | 3/4/2021 | 004288 | $93.00 |
| 5 | 6845 | 97153 & 32 | 9010 | 2/24/2021 | 2/27/2021 | 006888 | $248.00 |
| 6 | 6845 | 97155 & 24 | 9010 | 5/2/2021 | 5/3/2021 | 006678 | $349.20 |
| 7 | 7099 | 97153 & 30 | 9010 | 1/2/2021 | 2/26/2021 | 005388 | $436.50 |
| 8 | 7099 | 97153 & 24 | 9010 | 3/14/2022 | 3/21/2022 | 000048 | $232.80 |
| 9 | 7099 | 97155 & 24 | 9010 | 4/10/2022 | 4/11/2022 | 004398 | $232.80 |
| 10 | 8277 | 97153 & 10 | 9010 | 1/2/2021 | 2/26/2021 | 005378 | $77.50 |
| 11 | 8277 | 97153 & 32 | 9010 | 3/14/2022 | 3/21/2022 | 000038 | $248.00 |
| 12 | 8277 | 97155 & 24 | 9010 | 4/10/2022 | 4/11/2022 | 004388 | $232.80 |
| 13 | 6367 | 97153 & 28 | 9010 | 6/18/2021 | 6/20/2021 | 006768 | $248.00 |
| 14 | 6367 | 97153 & 28 | 9010 | 6/19/2021 | 7/12/2021 | 009508 | $248.00 |
| 15 | 6367 | 97155 & 20 | 9010 | 6/20/2021 | 6/21/2021 | 007838 | $248.00 |

---

[1]   Identified by last four of Medicaid Identification Number.
[2]   Identified by last four of National Provider Number.
[3]   Identified by digits seven through twelve of Claim Numbers, these are unique numbers. The first six digits of the claim number is the Julian Date the claim was submitted.

| 16 | 1261 | 97153 & 32 | 7555 | 8/31/2020 | 9/5/2020 | 008558 | $276.48 |
|---|---|---|---|---|---|---|---|
| 17 | 1261 | 97155 & 4 | 9010 | 12/20/2020 | 4/2/2021 | 000198 | $58.20 |
| 18 | 1261 | 97153 & 28 | 9010 | 3/10/2022 | 3/13/2021 | 004858 | $248.00 |
| 19 | 5254 | 97155 & 16 | 2168 | 7/9/2020 | 7/17/2020 | 003628 | $251.84 |
| 20 | 5254 | 97153 & 12 | 2168 | 8/11/2020 | 8/15/2020 | 009148 | $103.68 |
| 21 | 5254 | 97153 & 32 | 9010 | 6/16/2021 | 6/18/2021 | 004648 | $291.00 |

All in violation of Title 18, United States Code, Sections 1347 and 2.

## **FORFEITURE**

HEALTH CARE FRAUD:

As a result of the violations of Title 18, United States Code, Section 1347, as charged in this Indictment, upon conviction, Defendant, **STAMATINA BOURRET**, shall forfeit to the United States any property, real or personal, which constitutes, is traceable, or is derived from any proceeds the Defendant obtained, directly or indirectly, as a result of such violations.

PROPERTY:

Pursuant to 18 U.S.C. § 982(a)(7) and 28 U.S.C. § 2461(c), the property which is subject to forfeiture upon conviction of Defendant for the violations charged in this Indictment includes, but is not limited to, the following:

> Proceeds/Forfeiture Judgment:
>
> A sum of money equal to all proceeds the Defendant obtained, directly or indirectly, from the offenses charged in this Indictment, that is, a minimum of approximately $1,109,430.00 in United States currency, and all interest and proceeds traceable thereto, and/or that such sum equals all property derived from or traceable to his violations of 18 U.S.C. § 1347.

SUBSTITUTION OF ASSETS:

If any of the property described above as being subject to forfeiture, as a result of any act or omission of the Defendant:

    (a)    cannot be located upon the exercise of due diligence;
    (b)    has been transferred or sold to, or deposited with, a third person;
    (c)    has been placed beyond the jurisdiction of the Court;
    (d)    has been substantially diminished in value; or
    (e)    has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by 18 U.S.C. § 982(b)(1) to seek forfeiture of any other property of Defendant up to an amount equivalent to the value of the above-described forfeitable property;

Pursuant to Title 18, United States Code, Section 982(a)(7) and Title 28, United States Code, Section 2461(c).

A  TRUE  BILL

REDACTED
FOREPERSON

ADAIR F. BOROUGHS
UNITED STATES ATTORNEY

By: *[signature]*

Amy F. Bower (Fed. ID #11784)
Assistant United States Attorney
151 Meeting Street, Suite 200
Charleston, SC 29401
Tel.:   (843) 727-4381
Fax:   (843) 727-4443
Email: amy.bower@usdoj.gov

10